No. 23-50075

In the
**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
*Plaintiff-Appellant,*

v.

U.S. DRUG MART, INC., D/B/A FABENS PHARMACY,
*Defendant-Appellee.*

On Appeal from the United States District Court,
Western District of Texas, El Paso Division,
No. 3:21-CV-00232-FM

**BRIEF OF APPELLEE**

Barry A. Moscowitz
Texas Bar No. 24004830
bmoscowitz@thompsoncoe.com
Cassie J. Dallas
Texas Bar No. 24074105
cdallas@thompsoncoe.com
Ryan M. Owen
Texas Bar No. 24104839
rowen@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, LLP
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
(214) 871-8200

**Counsel for Appellee**

**ORAL ARGUMENT REQUESTED**

**No. 23-50075**

---

In the
**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
*Plaintiff-Appellant,*

v.

U.S. DRUG MART, INC., D/B/A FABENS PHARMACY,
*Defendant-Appellee.*

---

On Appeal from the United States District Court,
Western District of Texas, El Paso Division,
No. 3:21-CV-00232-FM

---

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Pursuant to Federal Rule of Appellate Procedure 26.1(a), U.S. Drug Mart d/b/a Fabens Pharmacy (hereafter Fabens Pharmacy) certifies that it is not owned by any other corporation and that no publicly held corporation owns 10% or more of its stock.

2

| | | |
|---|---|---|
| 1. | U.S. Equal Employment Opportunity | Plaintiff–Appellant |
| 2. | Jeremy D. Horowitz<br>Jeremy.horowitz@eeoc.gov<br>Gwendolyn Young Reams<br>Jennifer S. Goldstein<br>Dara S. Smith<br>United States Equal Employment<br>Opportunity Commission<br>Office of General Counsel<br>131 M St. N.E., Fifth Floor<br>Washington, D.C. 20507<br>(202) 921-2549 | Counsel for Plaintiff–<br>Appellant |
| 3. | U.S. Drug Mart, Inc., d/b/a Fabens Pharmacy | Defendant–Appellee |
| 4. | Barry A. Moscowitz<br>Texas Bar No. 24004830<br>bmoscowitz@thompsoncoe.com<br>Cassie J. Dallas<br>Texas Bar No. 24074105<br>cdallas@thompsoncoe.com<br>Ryan M. Owen<br>Texas Bar No. 24104839<br>rowen@thompsoncoe.com<br>THOMPSON, COE, COUSINS & IRONS, LLP<br>700 N. Pearl Street, Twenty-Fifth Floor<br>Dallas, Texas 75201-2832<br>(214) 871-8200 | Counsel for Defendant–<br>Appellee |
| 7. | Honorable Frank Montalvo<br>U.S. District Court<br>Western District of Texas<br>1205 Texas Avenue, Room 308<br>Lubbock, Texas 79401 | Senior U.S. District Court<br>Judge |

*/s/ Cassie J. Dallas*
Cassie J. Dallas
Attorney of Record for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

The District Court did not err in dismissing the EEOC's two claims on summary judgment. Nevertheless, because the issues raised in this appeal are subject to de novo review, Fabens Pharmacy respectfully submits that oral argument may assist the Court in deciding this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................2

STATEMENT REGARDING ORAL ARGUMENT ...............................................4

TABLE OF CONTENTS ...............................................................................5

TABLE OF AUTHORITIES ..........................................................................7

ISSUES PRESENTED ................................................................................12

I.      Whether an isolated conversation about mask-wearing protocol constitutes "extremely serious" conduct that affects a term, condition, or privilege of employment to support a hostile work environment claim. **(Response to the EEOC's Issue Presented No. 1, Element 4)**................................................................12

II.     Whether a hostile work environment claim survives summary judgment when the alleged harassment—an isolated conversation about mask-wearing protocol—is based on an employee's attitude, not his asthma diagnosis. **(Response to the EEOC's Issue Presented No. 1, Element 3)**...................................12

III.    Whether immediately reprimanding a supervisory employee for name-calling constitutes a "prompt remedial action" that negates a hostile work environment claim when no further alleged harassment occurs. **(Response to the EEOC's Issue Presented No. 1, Element 5)**................................................................12

IV.     Does a plaintiff's constructive discharge claim survive summary judgment when the plaintiff failed to offer evidence of any relevant factor under Fifth Circuit precedent? **(Response to the EEOC's Issue Presented No. 2)**.......................................12

STATEMENT OF THE CASE .......................................................................13

I.      In late March 2020, amid the growing COVID-19 public health emergency and rapidly changing guidelines, Calzada's request to wear a mask while working is initially denied....................................13

II.    Fabens Pharmacy changes course and allows employees to wear masks; Calzada quits his job anyway ...................................................17

III.    The EEOC claims that Fabens Pharmacy subjected Calzada to a hostile work environment because of the March 30, 2020 conversation .......................................................................................19

SUMMARY OF THE ARGUMENT ...................................................................21

ARGUMENT ...................................................................................................22

I.    The District Court properly granted summary judgment on the EEOC's hostile work environment claim ...........................................23

A.    Fabens Pharmacy's conduct never affected a term, condition, or privilege of employment (Element 4) .................24

1.    The alleged harassment was not objectively severe or pervasive under *Septimus*, *Saketkoo*, and *Pennington* ......................................................................25

2.    The EEOC's concerns about "deadly and communicable diseases" or power imbalances due to age are not supported by Fifth Circuit precedent or the record ...................................................................32

B.    The alleged harassment was based on Calzada's attitude, not his asthma diagnosis (Element 3) ........................................36

C.    The EEOC's claim also fails because Fabens Pharmacy took prompt remedial action against Mosher (Element 5) .......40

II.    The District Court properly dismissed the EEOC's constructive discharge claim ....................................................................................44

CONCLUSION ................................................................................................47

CERTIFICATE OF SERVICE ...........................................................................49

CERTIFICATE OF COMPLIANCE ....................................................................50

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abramson v. William Paterson Coll. of N.J.*,
  260 F.3d 265 (3d Cir. 2001) ...............................................................35

*Alaniz v. Zamora-Quezada*,
  591 F.3d 761 (5th Cir. 2009) ..............................................................27

*Amerisure Mut. Ins. Co. v. Arch Specialty Ins. Co.*,
  784 F.3d 270 (5th Cir. 2015) .........................................................36, 40

*Brown v. Kinney Shoe Corp.*,
  237 F.3d 556 (5th Cir. 2001) .........................................................45, 47

*Butler v. Ysleta Indep. Sch. Dist.*,
  161 F.3d 263 (5th Cir. 1998) .........................................................25, 37

*Byrnes v. City of Hattiesburg*,
  662 F. App'x. 288 (5th Cir. 2016) .......................................................37

*Carmon v. Lubrizol Corp.*,
  17 F.3d 791 (5th Cir. 1994) ................................................................42

*Collier v. Bernhard MCC LLC*,
  2:19-CV-00848, 2022 WL 806802 (W.D. La. Mar. 15, 2022) ..........37

*Dornhecker v. Malibu Grand Prix Corp.*,
  828 F.2d 307 (5th Cir.1987) .........................................................43, 44

*EEOC v. Management Hospitality of Racine, Inc.*,
  666 F.3d 422 (7th Cir. 2012) ..............................................................34

*Espinoza v. Brennan*,
  EP-14-CV-290-DB, 2016 WL 7176663 (W.D. Tex. Dec. 7, 2016) ...................37

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) .........................................................................26, 40

*Flowers v. S. Reg'l Physician Servs. Inc.*,
  247 F.3d 229 (5th Cir. 2001) ..............................................................31

*Garner v. Wal-Mart Stores, Inc.*,
   807 F.2d 1536 (11th Cir.1987) ..........................................................44

*Gordon v. Acosta Sales & Mktg., Inc.*,
   622 F. App'x 426 (5th Cir. 2015) ...............................................41, 45

*Green v. Brennan*,
   578 U.S. 547 (2016)....................................................................45, 46

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993).......................................................................27, 31

*Hirras v. Nat'l R.R. Passenger Corp.*,
   95 F.3d 396 (5th Cir.1996) ...............................................................42

*Ibraheem v. Wackenhut Servs., Inc.*,
   29 F. Supp. 3d 196 (E.D.N.Y. 2014) ................................................35

*Indest v. Freeman Decorating, Inc.*,
   164 F.3d 258 (5th Cir. 1999) ......................................................41, 42

*Johnson v. Tyson Foods, Inc.*,
   No. 22-10171, 2023 WL 2645553 (5th Cir. Mar. 27, 2023) .......................30, 31

*Kumar v. Shinseki*,
   495 F. App'x 541 (5th Cir. 2012) (per curiam) .................................29

*Lockard v. Pizza Hut, Inc.*,
   162 F.3d 1062 (10th Cir. 1998) ........................................................28

*Mathirampuzha v. Potter*,
   548 F.3d 70 (2d. Cir. 2008) ..............................................................28

*Melson v. Chetofield*,
   No. 08-3683, 2009 WL 537457 (E.D. La. Mar. 4, 2009)...................37

*Mockler v. Multnomah County*,
   140 F.3d 808 (9th Cir. 1998) ............................................................41

*Morris v. City of Colo. Springs*,
   666 F.3d 654 (10th Cir. 2012) ...............................................32, 33, 34

*Nash v. Electrospace Sys., Inc.*,
   9 F.3d 401 (5th Cir. 1993) ...................................................................42

*Paskert v. Kemna-ASA Auto Plaza, Inc.*,
   950 F.3d 535 (8th Cir. 2020) ..............................................................32

*Penn. State Police v. Suders*,
   542 U.S. 129 (2004)..............................................................................45

*Pennington v. Texas Dep't of Family and Protective Servs.*,
   No. A-09-CA-287-SS, 2010 WL 11519268 (W.D. Tex. Nov. 23,
   2010), *aff'd*, 469 F. App'x 332 (5th Cir. 2012) .....................................25, 28, 46

*Perret v. Nationwide Mut. Ins. Co.*,
   770 F.3d 336 (5th Cir. 2014) .........................................................45, 46

*Planned Parenthood of Greater Texas Fam. Plan. & Preventative
   Health Servs., Inc. v. Kauffman*,
   981 F.3d 347 (5th Cir. 2020) ...............................................................33

*Saketkoo v. Adm'rs of Tulane Educ. Fund*,
   31 F.4th 990 (5th Cir. 2022) .................................22-26, 28, 29, 33, 46

*Scaife v. U.S. Dep't of Veterans Affs.*,
   49 F.4th 1109 (7th Cir. 2022) ..............................................................32

*Septimus v. Univ. of Houston*,
   399 F.3d 601 (5th Cir. 2005) ..................................24, 25, 26, 27, 28, 30, 35, 46

*Skidmore v. Precision Printing & Pkg., Inc.*,
   188 F.3d 606 (5th Cir. 1999) .........................................................42, 43

*Thompson v. Microsoft Corp.*,
   2 F.4th 460 (5th Cir. 2021) ..................................................................29

*Tomka v. Seiler Corp.*,
   66 F.3d 1295 (2d Cir. 1995), abrogated on other grounds by
   *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) .....................28

*Waltman v. Int'l Paper Co.*,
   875 F.2d 468 (5th Cir.1989) ................................................................42

*Wantou v. Wal-Mart Stores Tex., L.L.C.*,
  23 F.4th 422 (5th Cir. 2022) .........................................................................27, 44

*Waymire v. Harris County*,
  86 F.3d 424 (5th Cir. 1996) ..........................................................................42, 43

*Williams v. U.S. Dep't of Navy*,
  149 F. App'x 264 (5th Cir. 2005) (per curiam) ................................................29

**STATUTES**

42 U.S.C. § 12112(a) ................................................................................................24

**RULES**

FED. R. CIV. P. 56(a).................................................................................................23

**OTHER AUTHORITIES**

*CDC Museum COVID-19 Timeline*,
  https://www.cdc.gov/museum/timeline/covid19.html (last visited
  June 12, 2023)....................................................................................................15

Center for Disease Control and Prevention, *CDC Museum COVID-19
  Timeline*, https://www.cdc.gov/museum/timeline/covid19.html (last
  visited June 12, 2023) .......................................................................................14

Deborah Netburn, *A timeline of the CDC's advice on face masks*, L.A.
  TIMES (July 27, 2021) https://www.latimes.com/science/story/2021-
  07-27/timeline-cdc-mask-guidance-during-covid-19-pandemic .......................15

EEOC, Memorandum to Federal Sector EEO Directors and Officials
  Rescinding April 6, 2020 and July 27, 2020 Memoranda
  https://www.eeoc.gov/federal-sector/memorandum-federal-sector-
  eeo-directors-and-officials-rescinding-april-6-2020-and (last visited
  June 12, 2023)....................................................................................................30

Executive Order GA-29 (GA-29) (July 2, 2020)....................................................14

Guidance for COVID-19, Center for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/communication/guidance-list.html?Sort=Date%3A%3Aasc (last visited June 12, 2023) (listing earliest date that official guidance document posted as June 2, 2020)......................................................14

## ISSUES PRESENTED

I.      Whether an isolated conversation about mask-wearing protocol constitutes "extremely serious" conduct that affects a term, condition, or privilege of employment to support a hostile work environment claim.

**(Response to the EEOC's Issue Presented No. 1, Element 4).**

II.     Whether a hostile work environment claim survives summary judgment when the alleged harassment—an isolated conversation about mask-wearing protocol—is based on an employee's attitude, not his asthma diagnosis.

**(Response to the EEOC's Issue Presented No. 1, Element 3).**

III.    Whether immediately reprimanding a supervisory employee for name-calling constitutes a "prompt remedial action" that negates a hostile work environment claim when no further alleged harassment occurs.

**(Response to the EEOC's Issue Presented No. 1, Element 5).**

IV.     Does a plaintiff's constructive discharge claim survive summary judgment when the plaintiff failed to offer evidence of any relevant factor under Fifth Circuit precedent?

**(Response to the EEOC's Issue Presented No. 2).**

## STATEMENT OF THE CASE

This lawsuit by the EEOC arises from a claim of disability discrimination made by David Calzada Jr., a pharmacy technician, against his former employer U.S. Drug Mart, Inc. d/b/a Fabens Pharmacy, a pharmacy in Fabens, Texas, a small town near the Texas-Mexico border, approximately 30 miles southeast of El Paso. Calzada quit his position on March 30, 2020, and filed a Charge of Discrimination after a disagreement with manager, Anna Navarrette, and Pharmacist-in-Charge Steve Mosher about mask-wearing. (ROA.7–9, 259, 259–260, 298, 301, 303–04, 330).

After a failed conciliation process, the EEOC sued Fabens Pharmacy, claiming that it "ha[d] engaged in unlawful employment practices in violation of Title I of the ADA," namely "discriminat[ing] against [Calzada] based on his disability (asthma) ... by subjecting him to a hostile work environment, resulting in his constructive discharge...." (ROA.7).

## I.    In late March 2020, amid the growing COVID-19 public health emergency and rapidly changing guidelines, Calzada's request to wear a mask while working is initially denied

Calzada started working for Fabens Pharmacy on August 8, 2018, after interviewing with Navarrette and Mosher. (ROA.259, 300, 369–70). He was eighteen (18) years old at the time. (ROA.233, 369). From August 2018 to March 2020, Calzada reported zero instances of harassment, mistreatment, or discrimination—either generally or based on his reported asthma diagnosis.

(ROA.82, 275, 370; *see also* ROA.111 (charge describing dates of alleged discrimination from "March 26, 2020 to March 30, 2020")).

Calzada generally enjoyed his job at Fabens Pharmacy. (ROA.82). Supervisors had an open-door policy, and Calzada celebrated certain holidays (Halloween) with Navarrette and others. *See* (ROA.308, 311). He worked with few restrictions, if any, related to his asthma, and he carried an inhaler containing albuterol sulfate. (ROA.257, 261–263). In fact, Calzada marked "no" on his employment application when asked "do you have any physical, mental, or medical impairments which would interfere with your ability to do the job you applied for?" (ROA.261).[1]

On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. Center for Disease Control and Prevention, *CDC Museum COVID-19 Timeline*, https://www.cdc.gov/museum/timeline/covid19.html (last visited June 12, 2023). Within days, the government declared a nationwide emergency and states began implementing shutdowns to prevent the spread of COVID-19. *Id*. No federal, state, or local regulation required that employers provide or allow face masks at work.[2]

---

[1] Calzada reported pre-COVID "disagreements" with management, but the disagreements had nothing to do with Calzada's asthma. (ROA.90). For example, Mosher sometimes asked Calzada to answer phones or perform other tasks when he became distracted. (ROA.305).

[2] Guidance for COVID-19, Center for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/communication/guidance-list.html?Sort=Date%3A%3Aasc (last visited June 12, 2023) (listing earliest date that official guidance document posted as June 2, 2020); Executive Order GA-

Employers like Fabens Pharmacy faced unprecedented challenges; meanwhile, the government issued rapidly changing guidelines for preventing infection and transmission of COVID-19. For example, just a few weeks earlier, on February 29, 2020, the United States Surgeon General tweeted:



Deborah Netburn, *A timeline of the CDC's advice on face masks*, L.A. TIMES (July 27, 2021) https://www.latimes.com/science/story/2021-07-27/timeline-cdc-mask-guidance-during-covid-19-pandemic (original twitter post deleted). By the end of March 2020, the CDC suggested that the only people who needed to wear face masks are those "who are sick or are caring for someone who is sick and unable to wear a mask" because masks "may be in short supply." (ROA.94).

The CDC did not update mask wearing guidelines to recommend that all people wear masks when going outside their homes until April 3, 2020. *CDC*

---

29 (GA-29) (July 2, 2020) (Texas executive order relating to the use of face coverings not issued until July 2, 2020, superseded by GA-23 on March 9, 2021); City of El Paso, Texas, Second Am. to Local Emergency Directive (amending El Paso regulations to require face coverings outside the home for the first time on April 13, 2020).

*Museum COVID-19 Timeline*, https://www.cdc.gov/museum/timeline/covid19.html (last visited June 12, 2023).

On Thursday, March 26, 2020, Calzada wore a facemask to work. (ROA.266–67). Navarrette asked him to remove the mask. (ROA.267, 313). Calzada refused and clocked out. (ROA.100, 256–57, 267–68, 313, 354) ("I was given two choices; I took what choice I wanted."). He was not scheduled to work the next day. (ROA.268).

In explaining her reasons for requesting that Calzada remove his mask Navarette stated that her boss, Chief Operating Officer David Paschal, had expressed concerns that employees should not create panic or fear at the pharmacy and "didn't want the patients to think that we were sick." (ROA.266–67; *see also* ROA.94, 131, 324, 326).[3] At the time, the CDC recommended mask-wearing only for sick individuals and care givers. (ROA.94). Public health officials were also concerned with public panic and potential shortages of personal protective equipment, which the CDC suggested reserving for caregivers and the elderly. (ROA.104–05). To preserve PPE, and as part of educating her community, Navarrette even made face masks on site. (ROA.313).

---

[3] Calzada wore a facemask to work the previous day. (ROA.320). Nothing in the record reflects whether Calzada asked to adjust his schedule as a result of the World Health Organization's declaration of COVID-19 as a pandemic on March 11, 2020.

## II.     Fabens Pharmacy changes course and allows employees to wear masks; Calzada quits his job anyway

Before Calzada's next scheduled shift, which was on Friday, March 29, 2020, the pharmacy adjusted its policy and began allowing employees to wear masks. Navarrette offered employees PPE, including masks and gloves and implemented other COVID-19 precautions. (ROA.105–108). The record shows that Navarrette told Calzada he could wear a mask. (ROA.320; *see also* ROA.183).

On Saturday, March 28, 2020, Calzada returned to work. (ROA.265). Roberto Primero, a senior pharmacy technician, told Calzada that he needed to speak with Navarrette and Mosher before he clocked in because he was not actually scheduled to work that day. (ROA.101, 265, 268–269). Instead of speaking with Navarrette or Mosher about his concerns, Calzada left the pharmacy and went home. (ROA.268–269).

On Monday, March 30, 2020, Mr. Calzada returned for his next scheduled shift. (ROA.270). A fellow employee told Calzada that Navarrette wanted to speak with him. (ROA.270–272). Calzada recorded the conversation on his cell phone. (ROA.270, 272; *see also* ROA.344–61) (transcript of audio recording from March 30, 2020).

Navarrette asked Calzada to sit down before the conversation began. (ROA.309). He refused. (ROA.309). Agitated and upset, Calzada "was not himself that day;" he came across as threatening. (ROA.139, 200, 300, 311).

Navarrette focused on the COVID-19 precautions that Fabens Pharmacy had already implemented. Precautions included the use of masks, gloves, shutting down the lobby, and allowing Calzada to work in a different location. (ROA.79, 80, 81). Navarrette and Mosher also discussed Calzada's disrespectful attitude. (ROA.80). Navarrette told Calzada: "I just want your attitude to be different, to be one that comes and talks about [company policy] and not tries to enforce it." (ROA.80). Mosher admittedly conducted himself in an unprofessional manner by raising his voice and name-calling. (ROA.290). Navarrette almost immediately admonished him, telling Mosher that he could not act that way toward another employee after the meeting. (ROA.141, 318). Navarette told Mosher it was "unacceptable and that was not something that was going to be ever again presented with another one of our staff and he needed to change his attitude." (ROA.141, 318). Navarrette continued: "And I even got him some tips on management and everything. I printed out things for him," which Mosher reviewed. (ROA.141, 318). Mosher never made similar comments to Calzada. (ROA.141, 318).

The conversation ended with Navarrette offering Calzada a mask and gloves. (ROA.79, 80). She also offered to work in a different location to reduce potential exposure to COVID-19. (ROA.81). Calzada returned to work at the end of the conversation. (ROA.315).

Calzada clocked out for lunch around 12:30 p.m. (ROA.315–316). When Calzada did not return from lunch, Navarrette called his cell phone. (ROA.316). Calzada did not answer, but Navarrette noticed that he later came back into the pharmacy and quickly left. (ROA.316). Navarrette called a second time, and Calzada's mother answered. (ROA.316–317). She told Navarrette that her son "will not be returning to work." (ROA.317–18).

## III. The EEOC claims that Fabens Pharmacy subjected Calzada to a hostile work environment because of the March 30, 2020 conversation

Calzada filed his Charge of Discrimination with the EEOC on July 14, 2020. (ROA.111). He initially alleged that Navarrette and Mosher failed to accommodate his disability by prohibiting him from wearing a mask and forcing him to resign. (ROA.111). Later, Calzada admitted under oath that he was told he could wear a mask to work. (ROA.111, 85–87). Calzada also admitted that he was not forced to resign due to any failure to accommodate his request to wear a face mask. (ROA.111, 85–90).

Nevertheless, the EEOC commenced this action on September 24, 2021, alleging that Fabens Pharmacy subjected to Calzada "to a hostile work environment, resulting in his constructive discharge." (ROA.5, 7).[4]

---

[4] The EEOC also moved for Partial Summary Judgment on various affirmative defenses. (ROA.143) (June 13, 2022). The District Court denied all pending motions, including the EEOC's Motion for Partial Summary Judgment, on October 18, 2022. (ROA.444). The EEOC did not appeal the denial of its Motion for Partial Summary Judgment as moot. (Appellant's Br. 12–13).

The District Court granted summary judgment in favor of Fabens Pharmacy and dismissed both of the EEOC's claims. (ROA.435). The EEOC failed to establish that the alleged harassment affected a term, condition, or privilege of Calzada's employment. (ROA.436–43). For similar reasons, the District Court granted summary judgment as to the EEOC's constructive discharge claim. (ROA.443).[5] This appeal followed. (ROA.445–46).

---

[5] The District Court denied Fabens Pharmacy on the issue of whether the alleged harassment occurred because of Calzada's disability. (ROA.435–36). Further, the District Court denied summary judgment on the issue of whether Fabens Pharmacy took prompt remedial action to preclude the EEOC's hostile work environment claim. (ROA.442).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed both of the EEOC's claims. The EEOC's hostile work environment claim fails for three reasons, but primarily because Fifth Circuit precedent does not recognize the alleged harassment here—a single incident of yelling, criticism, and name-calling—as sufficiently severe or "extremely serious" to support a hostile work environment claim or constructive discharge claim.

Courts examine the totality of the circumstances to determine whether alleged harassment is sufficiently severe to affect a term, condition, or privilege of employment. The Fifth Circuit has recognized that isolated incidents of harassment must rise to the level of "extremely serious" to create a hostile work environment.

Examining the relevant factors shows that the alleged harassment here—a heated, but isolated disagreement about mask-wearing policies in late-March 2020—is not severe, extremely serious conduct that objectively affected Calzada's employment. The Fifth Circuit has consistently rejected hostile work environment claims based on similar "boorish and offensive" conduct, and the EEOC cited nothing to support other relevant factors. Further, the EEOC's assertion that the Court should recognize a "communicable disease" exception, or that the Court should pay special attention to the age discrepancy between employer and employee,

ignores the existing framework for evaluating the existence of a hostile work environment, which already takes into account the totality of circumstances.

Summary judgment may also be affirmed on two additional grounds not found by the District Court. Specifically, the EEOC never demonstrated the required nexus between the alleged harassment and Calzada's asthma. The disagreement with his supervisor Navarrette and pharmacist-in charge Mosher occurred as a result of Calzada's disrespectful attitude, not because of his asthma. Further, the EEOC never met its burden to establish that Fabens Pharmacy took no "prompt remedial action." In fact, Navarrette immediately reprimanded Mosher, and no future harassment occurred.

The District Court also got it right when it dismissed the EEOC's constructive discharge claim. The EEOC did not meet its burden to show that working conditions became so intolerable that a reasonable person in the Calzada's position would have felt compelled to resign. Because the District Court properly concluded that Plaintiff's hostile work environment claim failed, its dismissal of the constructive discharge claim was also proper. This Court should affirm.

### ARGUMENT

This Court reviews summary judgment orders de novo. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.*

No genuine issue of material fact precluded summary judgment on either of the EEOC's two claims. (ROA.444). While the EEOC suggests that this Court should reverse based on the District Court's stated view that a short-lived, albeit heated disagreement about mask wearing in late-March 2020 "created an 'abusive working environment, and interfered with [Calzada's] 'opportunity to succeed in the workplace," (ROA.438), the EEOC failed to show below and fails to show on appeal that the isolated incident was sufficiently severe or pervasive to create a hostile work environment. The District Court properly granted summary judgment for the reasons articulated in its opinion and based on the additional uncontroverted facts and other grounds asserted by Fabens Pharmacy.

## I.    The District Court properly granted summary judgment on the EEOC's hostile work environment claim

To establish a hostile-work-environment claim under the ADA, the EEOC was required to show that:

(1)    Calzada belonged to a protected group,

(2)    Calzada was subject to unwelcome harassment,

(3)    The harassment was based on Calzada's disability (his asthma diagnosis),

(4)    The harassment affected a term, condition, or privilege of employment, and

(5)    Fabens Pharmacy knew or should have known of the harassment and failed to take prompt remedial action.

*Saketkoo*, 31 F.4th at 1003; *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005); 42 U.S.C. § 12112(a).

The District Court granted summary judgment because the summary judgment evidence did not show that the alleged harassment affected a term, condition, or privilege of Calzada's employment. (ROA.436–443) (element 4). It denied summary judgment on the issue of whether the alleged harassment occurred because of Calzada's disability. (ROA.435–436) (element 3). The District Court found that the EEOC was not required to show Fabens Pharmacy failed to take prompt remedial action because it found Calzada "was harassed by his supervisors." (ROA.442) (element 5).[6]

## A.    Fabens Pharmacy's conduct never affected a term, condition, or privilege of employment (Element 4)

To support a hostile working environment claim, the EEOC must show that severe or pervasive harassment affected a term, condition, or privilege of Calzada's employment. *Saketkoo*, 31 F.4th at 1003. To be actionable, the alleged harassment

---

[6] Elements 1 and 2 are not at issue. Calzada belonged to a protected group because he has asthma, and Calzada alleged unwelcome harassment. (ROA.72, 435).

must have objectively created a hostile or abusive environment. *Id.* Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors like the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.*

"[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Saketkoo*, 31 F.4th at 997, 1003 (citing *Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 269 n.3 (5th Cir. 1998)). The conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.*

### 1. The alleged harassment was not objectively severe or pervasive under *Septimus*, *Saketkoo*, and *Pennington*

The alleged harassment here consisted of one heated conversation. (ROA.111) (Calzada describing dates of alleged discrimination from March 26, 2020 to March 30, 2020). That is the type of conduct the Fifth Circuit consistently describes as an "isolated incident." *See, e.g.*, *Septimus*, 399 F.3d at 612 (affirming dismissal of claim focused on "two-hour harangue" during which claimant sobbed uncontrollably); *Pennington v. Texas Dep't of Family and Protective Servs.*, No. A-09-CA-287-SS, 2010 WL 11519268, at *11–12 (W.D. Tex. Nov. 23, 2010), *aff'd*, 469 F. App'x 332 (5th Cir. 2012) (affirming dismissal of claim focused on "several isolated incidents"

that involved yelling, slamming files, and physically threatening). In fact, the EEOC acknowledged that the alleged conduct involved an isolated incident on March 30, 2020. (ROA.242) ("The harassment complained of in this case involves the meeting held between Calzada, Navarette and Mosher on March 30, 2020."). Accordingly, in addition to severe or pervasive harassment, Fifth Circuit precedent required that the EEOC show "extremely serious" conduct. *See Septimus*, 399 F.3d at 612

The EEOC's hostile work environment claim is not based on frequent conduct; instead, it relies on one conversation in over nineteen months of employment. (ROA.111, 242); *see Saketkoo*, 31 F.4th at 1003. To review, Calzada began working at Fabens Pharmacy in August 2018 when he was eighteen years old. (ROA.259, 369–70).[7] Despite supposed common knowledge of Calzada's disability among Fabens Pharmacy employees, Calzada never reported, and he cannot identify, a single incident of harassment before March 26, 2020. The incident at the heart of Calzada's complaint occurred on March 30, 2020. (ROA.8). One conversation over nineteen months of employment is infrequent, and it does nothing to show "extremely serious" conduct. *Saketkoo*, 31 F.4th at 1003 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).[8]

---

[7] According to Calzada, he reported his asthma to Fabens Pharmacy during his initial interview. (ROA.261). Calzada also asserted that he commonly used his albuteral sulfate inhaler at work, and other employees and supervisors frequently saw Calzada using an inhaler. (ROA.113, 241, 261).

[8] Calzada reported disagreements with management, but because those disagreements had nothing to do with disability discrimination, those disagreements cannot be considered as part of

The second factor is the severity of the alleged conduct.[9] Severity means that the workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abuse working environment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (evidence sufficient to support hostile work environment claim because the employer repeatedly propositioned the employee, commented on her physical appearance, and made unwanted physical contact) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Isolated incidents must involve "extremely serious" conduct to rise to the level of severe. *See, e.g.*, *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422 (5th Cir. 2022) (co-workers calling a Black pharmacist "chimp," "monkey," or "African fart," and mocking his accent in front of customers).[10]

While a single or an isolated incident can give rise to an ADA claim if it is severe enough, such claims are rare and typically involve physical violence. *See,*

---

harassment directed at Calzada because of his disability. (ROA.90). Therefore, the only harassment in question is the meeting between Calzada, Mosher, and Navarrette.

[9] Although the Fifth Circuit has separately examined severity and pervasiveness of alleged conduct, the EEOC never claimed that the Fabens Pharmacy's conduct was pervasive. *See* (Appellant's Br. 19) (arguing severity, not pervasiveness)); *Septimus*, 399 F.3d at 611 (citing standard as "conduct sufficient to create a hostile work environment must be severe or pervasive."). This comports with the District Court's opinion: "since the alleged harassment was an isolated event, the court analyzes it under the severe—as opposed to pervasive—prong." (ROA.437).

[10] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 434–35 (5th Cir. 2022), cert. denied, 214 L. Ed. 2d 449, 143 S. Ct. 745 (2023), *reh'g denied sub nom. Wantou v. Wal-Mart Stores Tex., L.L.C*, 143 S. Ct. 1049 (2023). Although the Court noted that such conduct might rise to the level of severe or pervasive, it ultimately affirmed summary judgment in favor of the employer due to prompt remedial action. *Id.*

*e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) (holding that a single incident of physically threatening and humiliating conduct can be sufficient to create a hostile work environment for a sexual harassment claim); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ("[A] single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for the purposes of Title VII liability."); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 78–79 (2d. Cir. 2008) ("[W]e require that [a single] incident constitute an 'intolerable alteration' of the plaintiff's working conditions" to state a hostile work environment claim.).

Outside of racial epithets or physical violence, the Fifth Circuit has held that isolated incidents involving yelling, screaming, and demeaning behavior are not "extremely serious" to affect a term, condition, or privilege of employment. *See, e.g.*, *Septimus*, 399 F.3d at 612 ("two-hour harangue" during which the claimant's supervisor frightened her not severe or pervasive, even though the claimant "sobbed uncontrollably."); *Saketkoo*, 31 F.4th at 1003–004 (supervisor yelling, mocking, and degrading an employee did not support a hostile work environment claim, despite comments like "We don't need you thinking! We need you working."); *Pennington*, 2010 WL 11519268, at *11-12 (yelling, screaming, and physically threatening

behavior were "not serious" and "not frequent enough" to constitute severe or pervasive conduct).

In *Saketkoo*, this Court noted that it has "routinely held" that sporadic and abrasive conduct is neither severe nor pervasive. *Saketkoo*, 31 F.4th at 1003–004; *see also Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (no hostile work environment claim despite complaints from autistic plaintiff that his manager told him to "seek a different career," and that he faced unfair criticism); *Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012) (per curiam) (affirming summary judgment rejecting a hostile work environment claim based on threats to job security, delays in accommodating his carpel tunnel disability, and efforts to impugn his reputation and the quality of his work)); *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 268 (5th Cir. 2005) (per curiam) (affirming summary judgment and rejecting a hostile work environment claim involving an alleged harasser "yelling and displaying anger toward [plaintiff] over fax machine toner")).

This case, like *Septimus*, *Saketkoo*, and *Pennington*, involves an isolated incident in which Calzada was admonished for having a bad attitude and acting like a "little kid." The EEOC suggests that Fabens Pharmacy "threatened," "criticized," and "demeaned" Calzada. (ROA.9). The EEOC points out that calling Calzada a "stupid little kid" and Mosher's comment that he would "fire his ass" are inappropriate. (Appellant's Br. 7–9); (ROA.244). Mosher does not deny what he

said, but even assuming all of it is true, it is not enough to constitute severe or pervasive conduct under Fifth Circuit precedent. *See Septimus*, 399 F.3d at 612 (noting that much of the conduct leading to the claimant sobbing uncontrollably was "boorish and offensive.").

Indeed, Mosher acknowledged that his comments were not helpful and resulted from his own "stupidity." (ROA.290). He described the exchange as like "one five-year-old kid talking to another five-year-old kid. (ROA.290). "It was just frustration and stupidity." (ROA.290). The District Court correctly concluded that this isolated, heated exchange about mask-wearing (before it was even recommended by the CDC for everyone leaving their home to wear a mask and before any local government required it) was not sufficiently severe to rasiea fact issue. Albeit in a different context, even the EEOC described early 2020 as an "unprecedented time." EEOC, Memorandum to Federal Sector EEO Directors and Officials Rescinding April 6, 2020 and July 27, 2020 Memoranda https://www.eeoc.gov/federal-sector/memorandum-federal-sector-eeo-directors-and-officials-rescinding-april-6-2020-and (last visited June 12, 2023). Federal and state regulators issued obscure guidance related to COVID-19 protocols, especially at the beginning of the pandemic. *Johnson v. Tyson Foods, Inc.*, No. 22-10171, 2023 WL 2645553, *3 (5th Cir. Mar. 27, 2023).

Nothing in the record shows evidence of other relevant factors. Calzada never testified to feeling physically threatened. *See id.* (requiring both subjective and objective evidence to support hostile work environment claim). In addition, other employees worked in the pharmacy on March 30, 2020, but Calzada has never claimed that he felt humiliated.[11] Finally, Fabens Pharmacy did not unreasonably interfere in Calzada's work. Calzada testified that after the meeting on March 30, 2023, he went "I just tried to work how we usually do." (ROA.84). Navarrette, for her part, offered Calzada a mask and gloves at the end of the exchange and believed that he and she would be working together for the rest of that day, but Calzada never returned to work after his lunch break. (ROA.100–101, 359–60).

The cases the EEOC cites involve significantly different types of threatening and humiliating conduct than what occurred here. (Appellant's Br. 23) (citing *Harris*, 510 U.S. 17, 21 (1993)) (describing workplace conduct humiliating for female forklift operator because supervisor, on several occasions, stated "You're a woman, what do you know" and called her a "dumb ass woman."); *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229 (5th Cir. 2001) (describing workplace humiliation of plaintiff with recent HIV diagnosis, including subjecting plaintiff to multiple random drug tests, placing her on probation, and firing fired her).

---

[11] Roberto Primero, a senior pharmacy technician, reacted to the comments after-the-fact, but he had never heard the conversation before. (ROA.245, 338).

Further, the EEOC attempts to distinguish cases on which the District Court relied, but that effort is unpersuasive for several reasons. (Appellant's Br. 40–41); *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1116 (7th Cir. 2022) (holding that an incident involving one-time use of the N-word to describe the claimant was insufficient to meet severe or pervasive standard because the claimant heard about it secondhand); *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) (holding that incidents involving one instance of physical contact and statements that the supervisor never should have hired a female and wanted to make her cry were insufficient to meet severe or pervasive standard).

The EEOC failed to show that a genuine and material fact issue exists regarding whether the alleged harassment affected the terms, conditions, or privileges of his employment. The District Court properly granted summary judgment because the EEOC did not show any harassment that affected a term, condition, or privilege of Calzada's employment.

### 2. The EEOC's concerns about "deadly and communicable diseases" or power imbalances due to age are not supported by Fifth Circuit precedent or the record

Because the Fifth Circuit does not recognize a special "communicable disease" exception to its rule that an isolated incident will not support a hostile work environment claim, the EEOC asks the Court to change the existing framework. (Appellant's Br. 33) (citing *Morris v. City of Colo. Springs*, 666 F.3d 654 (10th Cir.

2012)). The EEOC's arguments ignore that the current "severe or pervasive" standard already accounts for the totality of the circumstances. *Saketkoo*, 31 F.4th at 1003; *supra*, Section I.A.1; *see also Planned Parenthood of Greater Texas Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 356 (5th Cir. 2020) (discussing the "rule of orderliness," in which one panel may not overturn another panel's decision, absent an intervening change in the law, "even if a panel's interpretation of the law appears flawed").

As part of those circumstances, courts examine the frequency and severity of alleged conduct, and carefully consider "the social context in which particular behavior occurs. . . ." *Morris*, 666 F.3d at 664. In this case, the District Court already examined the totality of the circumstances. (ROA.436–442). The EEOC offers no substantive analysis regarding why the Court should expand (and effectively overrule) its precedent. Instead, the EEOC simply points to other circuit courts of appeals decisions, which when properly read do not actually support expanding or altering the current "severe or pervasive" standard.

For example, the EEOC's relies on *Morris v. City of Colo. Springs* to support its argument that "communicable disease" exception should be adopted. In *Morris*, however, the Tenth Circuit affirmed summary judgment for the employer on the claimant's hostile work environment claim, even though the employer-doctor "hit" or "flicked" the claimant on a regular basis, and he threw pericardium tissue at her

inside an operating room. *Id.* at 665. The Court observed that such an isolated incident could not establish hostile or abuse behavior, especially considering the context—an operating room where contact with bodily tissue is not uncommon. *Id.* at 668. In dicta, the *Morris* Court suggested that a healthcare worker *might* predicate a hostile work environment claim on "exposure to human biological products." *See id.* at 668, n.7. But ultimately, the case did not involve a deadly or communicable disease, and the Court affirmed summary judgment for the employer. *Id.*

Citing *EEOC v. Management Hospitality of Racine, Inc.*, 666 F.3d 422 (7th Cir. 2012), the EEOC also relies on the age difference between Calzada and his supervisors as creating a fact issue. (Appellant's Br. 23, 30). The facts in *Management Hospitality of Racine, Inc.*, are clearly distinguishable. In that case, the Seventh Circuit, affirming the denial of the defendant's motion for judgment as a matter of law, noted the age difference between a female employee and male supervisor. *Mgmt. Hospitality of Racine*, 666 F.3d at 432. The case involved pervasive verbal and physical sexual harassment, including, among other things, the supervisor telling the plaintiff "he wanted to 'f*** her,'" propositioning her "for three-way sex," and "physical touching by 'slap groping' her buttocks." *Id*. His comments were highly offensive and the conduct pervasive, such that the Court affirmed the jury's finding in favor of the plaintiff on her hostile work environment claim. *Id*.

34

The conduct at issue here, is a far cry from that at issue in *Morris* or *Management Hospitality of Racine*. There was no physical contact and no threat of it. And the alleged harassment included only a short-lived disagreement about mask protocol.

The EEOC also attempts to distinguish *Septimus v. Univ. of Hous.*, 399 F.3d 601 (5th Cir. 2005), to bolster its assertion about age and power discrepancy. (Appellant's Br. 38). True, the claimant in *Septimus* was older than Calzada, but the EEOC ignores the fact that the *Septimus*-plaintiff was a junior attorney alleging discrimination based on her sex. *Id.* at 604–05. More specifically, the plaintiff worked for older male partners who described her as a "needy old girlfriend." *Id.* at 612. Despite the power discrepancy between a junior attorney and older male attorneys, this Court held that the alleged harassment was insufficient to objectively establish severe or pervasive conduct. *Id.*

The EEOC's suggestion that Calzada is more vulnerable than the plaintiff in *Septimus* simply because of his age falls flat. Further, Calzada never testified to subjective feelings of harassment based on his age.

The EEOC's attempt to parallel discrimination based on disability and discrimination based on religion is equally unconvincing. (Appellant's Br. 21) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265 (3d Cir. 2001); *Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196 (E.D.N.Y. 2014)). The

EEOC never explains how a request for religious accommodation is similar to a request to wear a mask at work. In any event, it is undisputed that Fabens Pharmacy allowed Calzada and all its employees to wear masks within days of Calzada telling his supervisor that he wanted to wear a mask at work. (ROA.84, 107–08, 320).

In holding that the facts did not support severe or pervasive harassment, the District Court properly considered the totality of the circumstances. This Court need not consider a new test or standard for determining whether a plaintiff has raised a fact issue on their hostile work environment claim.

### B.    The alleged harassment was based on Calzada's attitude, not his asthma diagnosis (Element 3)

Although the District Court found a fact issue with respect to whether the alleged harassment was based on Calzada's disability, the evidence supports that the disagreement and confrontation between Calzada, Navarrette, and Mosher was based on Calzada's bad attitude, not his asthma. Because this Court "may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court," this Court may affirm summary judgment in Fabens Pharmacy's favor on this ground as well. *Amerisure Mut. Ins. Co. v. Arch Specialty Ins. Co.*, 784 F.3d 270, 273 (5th Cir. 2015).

In denying summary judgment on this element, the District Court cited several distinguishable cases for the proposition that the EEOC needed to show only "some evidence that the alleged harassment was *connected to* [Calzada's] disability," either

36

"implicitly or explicitly." (ROA.435 (citing *Collier v. Bernhard MCC LLC*, 2:19-CV-00848, 2022 WL 806802, at *5 (W.D. La. Mar. 15, 2022) (citing *Byrnes v. City of Hattiesburg*, 662 F. App'x. 288, 290–91 (5th Cir. 2016)); *Espinoza v. Brennan*, EP-14-CV-290-DB, 2016 WL 7176663, at *11 (W.D. Tex. Dec. 7, 2016) (quoting *Melson v. Chetofield*, No. 08-3683, 2009 WL 537457, at *5 (E.D. La. Mar. 4, 2009))).

In *Collier v. Bernhard MCC LLC*, the district court granted summary judgment on the plaintiff's hostile work environment claim because no evidence showed that the adverse employment action was caused by the effects, or symptoms, of the disability. Collier, 2022 WL 806802, at *5 (the employer "at best knew only the name of the condition and the medications" the plaintiff was taking); *see also Byrnes v. City of Hattiesburg*, 662 F. App'x. 288, 290–91 (5th Cir. 2016) (affirming summary judgment in favor of employer when plaintiff relied solely on fact that he was harassed and also had cerebral palsy and was a racial minority at work).

Similarly in *Espinoza v. Brennan*, the district court granted summary judgment for the employer defendant because the plaintiff failed to show that the employer's derogatory statements related to his PTSD diagnosis. *Espinoza*, 2016 WL 7176663, at *11 (W.D. Tex. Dec. 7, 2016); *see also Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998) (cartoon suggesting that women are

incapable of teaching, which might undermine the ability of women to teach, did not show that employer harassed plaintiff because of her sex).

None of these cases support the District Court's conclusion that "[a]bsent his disability, there would have been no argument." (ROA.436). The audio tape recording (and transcript) of the meeting make clear that Mosher and Navarrette were upset with how Calzada communicated his disagreement with company policy. (ROA.97, 101). Navarrette began by explaining that she had reviewed existing CDC guidance, which, at the time, stated "If you are not sick, you do not need to wear a mask unless you are caring for someone who is sick," and reflected supply chain problems with masks, which was typical at the beginning of the COVID-19 pandemic in the United States. (ROA.97). Navarrette went on to discuss a co-worker of Calzada's who had asked to wear a mask the next day and had been accommodated as Fabens Pharmacy made adjustments to many of their policies and began taking additional precautions to protect against the spread of COVID-19. (ROA.97–98). Neither Navarrette nor Mosher were upset that Calzada requested to wear a face mask, and the policy was changed to allow mask-wearing. (ROA.101, 107–08). Mosher and Navarrette described the insubordinate way in which Calzada approached the topic of wearing a mask and his poor attitude in the face of the company policy. (ROA.96). Navarrette commented that "your attitude was the part that [] felt really disrespectful." (ROA.97).

According to Mosher, the "main point" of the conversation was Calzada's "complete lack of respect" for his superiors. (ROA.96). "[The] whole thing has to do with . . . "'I'm going to have my way.'" (ROA.101). When asked "did you yell at David during that conversation because he requested to wear a mask or because you felt like he was being disrespectful?" Mosher answered: "I think the conversation speaks for itself because he was being so disrespectful and threatening." (ROA.139). Navarrette told Calzada that he would be allowed to wear a mask and gloves, and that he could work in the back of the pharmacy, away from customers. (ROA.83–84, 359–60).

Calzada himself testified that he resigned for reasons that had nothing to do with disability discrimination. Calzada admitted that he resigned, in part, over personality disagreements with Mosher involving pharmacy operations, not disability discrimination. (ROA.83–84, 90). Calzada testified he quit "because of the disagreements, the -- or the arguments and all the kinda like the name calling and the yelling, all that, it was a combination of all that." (ROA.90).

What's more, the mask policy applied to all employees, as did the change in policy that occurred within days of Calzada asking to wear a mask at work. (ROA.107–08, 359).

The District Court incorrectly concluded that any evidence of a *connection* between the disability and the alleged harassment was sufficient to overcome

summary judgment on this element. The District Court's standard lacks any sort of limiting principle and essentially eliminates the requirement that the plaintiff product evidence of discrimination "based on a disability." The EEOC failed to show the required nexus between the harassment and Calzada's asthma diagnosis. Accordingly, this Court may affirm the summary judgment on its hostile work environment claim even though the District Court granted summary judgment on other grounds.

**C.   The EEOC's claim also fails because Fabens Pharmacy took prompt remedial action against Mosher (Element 5)**

Although the District Court found that Plaintiff did not need to show that Fabens Pharmacy took prompt remedial action, the evidence conclusively established that it did, which provides and independent basis for affirming summary judgment. *Amerisure Mut. Ins. Co.*, 784 F.3d at 273.

The District Court relied on *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), for the proposition that an employer is subject to vicarious liability for an actionable hostile environment created by a supervisor. (ROA.422). But notably, the order cited no authority for the proposition that "a plaintiff need not prove the final element of a hostile work environment claim." (ROA.442). *Faragher* does not provide support for that notion. And in fact, after *Faragher*, this Court has repeatedly held that an employer can avoid liability if it took prompt remedial action against a

harassing supervisor. *See, e.g.*, *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 267 (5th Cir. 1999).

In *Indest*, for example, the plaintiff sued the defendant-employer after her superior, a vice-president, made crude sexual comments and sexual gestures" to her, both while she was alone and while in the presence of her immediate supervisor and director. *Id*. at 260. The district court granted the employer's motion to dismiss, and this Court affirmed. *Id*. at 267. The Court examined *Faragher* and other recent United States Supreme Court cases in detail. *Id.* at 263–67. Ultimately, the Court held that the defendant's prompt remedial response foreclosed liability for creating a hostile work environment. *Id.* The Court reasoned:

> Imposing vicarious liability on an employer for a supervisor's "hostile environment" actions despite its swift and appropriate remedial response to the victim's complaint would thus undermine not only *Meritor* but Title VII's deterrent policy. Vicarious liability would amount to strict liability even though the plaintiff had suffered neither a severe and pervasive change in her working conditions nor any adverse employment action.

*Id*. at 266; *see also Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015) (affirming summary judgment for employer because of its prompt remedial action in response to claims of harassment by supervisor).

The plaintiff bears the burden of showing that his employer failed to take effective action. *See, e.g., Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir. 1998). "What is appropriate remedial action will necessarily depend on the

particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps...." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir.1989) (citations omitted). Prompt remedial action must be "reasonably calculated" to end the harassment. *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 615 (5th Cir. 1999).

The Fifth Circuit does not follow a black-and-white timeliness standard for what constitutes a "prompt" remedial action, but instead examines circumstances "based on the particular facts of the case." *Id*. at 615–16 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989) (citations omitted)); *Waymire v. Harris County*, 86 F.3d 424, 429 (5th Cir. 1996). There are many instances in which this Court has found that an employer's response to employee behavior constituted prompt remedial action as a matter of law. *See, e.g.*, *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir.1996) (listing cases).[12]

In many instances, in determining whether the employer's actions were remedial, this Court has considered whether the offending behavior in fact ceased. *See, e.g.*, *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir.1999)

---

[12] *See, e.g., Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir. 1996) (affirming judgment as a matter of law for an employer who promptly reprimanded the harassing employee, who never harassed the plaintiff again); *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794–95 (5th Cir. 1994) (affirming judgment for employer due to distribution of company memorandum regarding workplace behavior and follow up meetings); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993) (affirming judgment for employer after it transferred claimant to another department within one week of first complaints).

(Jones, J., with two Judges concurring in result) (affirming judgment as a matter of law for an employer who promptly punished the harassing employee, resulting in "complete cessation of harassment"); *Waymire* v, 86 F.3d 424, 429 (5th Cir.1996) (affirming judgment as a matter of law for the defendant who promptly reprimanded the harassing employee, who never harassed the plaintiff again); *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309–10 (5th Cir.1987) (reversing judgment for the plaintiff where the employer took decisive action but the plaintiff quit her job too soon for the remedy to have effect). In other words, prompt remedial action includes reprimanding or admonishing the offending employee. *Skidmore*, 188 F.3d at 615–16(employer's conduct constituted "prompt remedial action" as a matter of law because employer instructed the supervisor to leave the claimant alone and moved the claimant to a new shift); *Waymire*, 86 F.3d at 429. Where the evidence shows an employee never engages in harassment again after the employee is admonished, as a matter of law, the Fifth Circuit has found that the employer has engaged in sufficient prompt remedial measures.

Here, Fabens Pharmacy took prompt remedial action. Although unprompted by a complaint from Calzada, Navarrette immediately admonished Mosher and told him that he could not act that way toward another employee after the meeting with Calzada. (ROA.141, 318). "I said that was unacceptable and that was not something that was going to be ever again presented with another one of our staff and he needed

43

to change his attitude." (ROA.141, 318). Navarrette continued: "And I even got him some tips on management and everything. I printed out things for him," which Mosher reviewed. (ROA.141, 318).

No evidence suggests that Mosher made similar comments to Calzada or other employees. As importantly, Fabens Pharamacy changed its policy regarding mask-wearing and made masks and other PPE available to Calzada. (ROA.105–108, 183, 320). That Calzada quit before the remedy could take effect is immaterial. *See Dornhecker*, 828 F.2d at 309–10 (finding no hostile work environment or constructive discharge claim when employee resigned before allowing the employer an opportunity to demonstrate that it could curb alleged harassment); *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987) ("[P]art of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast."). The Court should thus affirm the District Court's grant of summary judgment on the additional grounds that Fabens Pharmacy took prompt remedial action. *See Wantou*, 23 F.4th at 434–35.

## II.    The District Court properly dismissed the EEOC's constructive discharge claim

The District Court also granted summary judgment on the EEOC's constructive discharge claim. (ROA.442–443).

As has been demonstrated, Fabens Pharmacy did not fire Calzada. He resigned by walking off the job on March 30, 2020. (ROA.317). A resignation is actionable

only if the resignation qualifies as a constructive discharge. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. *Id.*; *Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 429, 431 (5th Cir. 2015) (affirming dismissal of constructive discharge claim because employee resigned instead of calling or emailing to discuss accommodations). In other words, establishing constructive discharge, by definition, includes establishing a hostile work environment. *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004) (describing hostile work environment as a "lesser included component" of the "graver" constructive discharge claim). As the District Court explained, "because Plaintiff's hostile work environment claim must fail as a matter of law, so too must its constructive discharge claim." ROA.443; *see also Brown*, 237 F.3d at 566; *Gordon*, 622 F. App'x at 431.

To prove constructive discharge, Calzada was required to establish that "working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014); *Green v. Brennan*, 578 U.S. 547, 560 (2016). Courts have considered the factors like demotions, reductions in salary or responsibilities, reassignment to menial or degrading work, offers of early retirement, or harassment calculated to encourage resignation. *Id.* The ultimate

question is "whether working conditions became so intolerable a reasonable person in the employee's position would have felt compelled to resign." *Perret*, 770 F.3d at 338; *Green*, 578 U.S. at 560.

On appeal, the EEOC asserts that a reasonable jury could find that Fabens Pharmacy constructively discharged Calzada. (Appellant's Br. 46). Other than pointing to the facts cited in support of its hostile work environment claim, the only other argument offered by the EEOC in support of its constructive discharge claim relates to "reasonable accommodations." (Appellant's Br. 48). Of course, the EEOC abandoned its reasonable accommodation claim. (*See* ROA.5, 111). Calzada later admitted under oath that he was never told that he could not wear a facemask to work. (ROA.111, 85–86). Calzada also admitted that he was not forced to resign due to any failure to accommodate his request to wear a face mask. (ROA.111, 85–89). Fabens Pharmacy offered reasonable accommodations.

Nothing suggests that working conditions at Fabens Pharmacy became so intolerable that a reasonable person in Calzada's position would have felt compelled to resign. As explained above at Sections I.A, the District Court properly dismissed the EEOC's claims under binding Fifth Circuit precedent because the EEOC failed to establish a hostile work environment. *See Septimus*, 399 F.3d at 612; *Saketkoo*, 31 F.4th at 1003–004; *Pennington*, 2010 WL 11519268, at *11–12. Because

Plaintiff's hostile work environment fails, so too must its constructive discharge claim. *See Brown*, 237 F.3d at 566.

## CONCLUSION

Fabens Pharmacy respectfully prays that the Honorable Fifth Circuit Court of Appeals:

(1)    Affirm the District Court's order granting summary judgment to Fabens Pharmacy on EEOC's hostile work environment claim, signed and entered on October 18, 2022;

(2)    Affirm the District Court's order granting summary judgment to Fabens Pharmacy on EEOC's constructive discharge claim, signed and entered on October 18, 2022;

(3)    Award Fabens Pharmacy any other relief to which it is justly entitled.

Respectfully submitted,

*/s/ Cassie J. Dallas*

Barry A. Moscowitz
Texas Bar No. 24004830
bmoscowitz@thompsoncoe.com
Cassie J. Dallas
Texas Bar No. 24074105
cdallas@thompsoncoe.com
Ryan Owen
Texas Bar No. 24104839
rowen@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, LLP
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
(214) 871-8200

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2023, a true and correct copy of the above and foregoing document was served upon the following counsel for Appellant via e-service:

Jeremy D. Horowitz
Jeremy.horowitz@eeoc.gov
Gwendolyn Young Reams
Jennifer S. Goldstein
Dara S. Smith
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., Fifth Floor
Washington, D.C. 20507
(202) 921-2549
*Counsel for Appellant*

*/s/ Cassie J. Dallas*
Cassie J. Dallas

### CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,164 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).


2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font for the text, 12-point font for footnotes, and Times New Roman type style throughout.

*/s/ Cassie J. Dallas*
Cassie J. Dallas
Counsel for Appellee

Dated: June 12, 2023