No. 23-50075

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
    Plaintiff-Appellant,

v.

U.S. DRUG MART, INCORPORATED, doing business as FABENS PHARMACY,
    Defendant-Appellee.

On Appeal from the United States District Court
for the Western District of Texas, No. 3:21-cv-232
Hon. Frank Montalvo, United States District Judge

## REPLY BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS PLAINTIFF-APPELLANT

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

JEREMY D. HOROWITZ
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2549
Jeremy.Horowitz@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION ............................................................................................1

ARGUMENT...................................................................................................6

   I.  A reasonable jury could find that the disability-based harassment to which U.S. Drug Mart subjected Calzada was so severe that it altered the terms or conditions of his employment.............................................6

      A.   Taking the totality of the circumstances into account, a reasonable jury could find that the harassment Calzada experienced was "extremely serious." ............................................6

      B.   U.S. Drug Mart cannot immunize its harassing conduct merely by referring to Calzada's alleged "attitude." ...............................18

      C.   U.S. Drug Mart's argument about prompt remedial action misstates the law and the factual record......................................22

   II.  Calzada resigned in response to the harassment and, as the district court explained, a reasonable jury could find that a reasonable person in Calzada's position would have felt compelled to resign. ................29

CONCLUSION ...............................................................................................30

CERTIFICATE OF SERVICE ...........................................................................32

CERTIFICATE OF COMPLIANCE ....................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arguello v. Conoco, Inc.,*
207 F.3d 803 (5th Cir. 2000) ............................................................10

*Aryain v. Wal-Mart Stores Tex. LP,*
534 F.3d 473 (5th Cir. 2008) ............................................................23

*Burlington Indus., Inc. v. Ellerth,*
524 U.S. 742 (1998) ................................................10, 24, 25, 28

*Casiano v. AT&T Corp.,*
213 F.3d 278 (5th Cir. 2000) .......................................................24, 25

*Clark v. Champion Nat'l Sec., Inc.,*
952 F.3d 570 (5th Cir. 2020) ............................................................15

*EEOC v. Boh Bros. Constr. Co.,*
731 F.3d 444 (5th Cir. 2013) (en banc) .....................................*passim*

*EEOC v. Mgmt. Hosp. of Racine, Inc.,*
666 F.3d 422 (7th Cir. 2012) .......................................................10, 17

*EEOC v. WC&M Enters., Inc.,*
496 F.3d 393 (5th Cir. 2007) .........................................................7, 12

*Faragher v. City of Boca Raton,*
524 U.S. 775 (1998) ..................................................................*passim*

*Flowers v. S. Reg'l Physician Servs. Inc.,*
247 F.3d 229 (5th Cir. 2001) ......................................................*passim*

*Fox v. Gen. Motors Corp.,*
247 F.3d 169 (4th Cir. 2001) .........................................................7, 19

*Gordon v. Acosta Sales & Mktg., Inc.,*
622 F. App'x 426 (5th Cir. 2015) (per curiam) ...............................24

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17 (1993)..................................................................10, 16

*Harrison v. Eddy Potash, Inc.,*
248 F.3d 1014 (10th Cir. 2001)........................................................25

*Indest v. Freeman Decorating, Inc.,*
164 F.3d 258 (5th Cir. 1999).......................................................24, 25

*Indest v. Freeman Decorating, Inc.,*
168 F.3d 795 (5th Cir. 1999)..........................................................25

*Jacobs v. Nat'l Drug Intel. Ctr.,*
548 F.3d 375 (5th Cir. 2008)..........................................................24

*Kelley v. Corr. Med. Servs., Inc.,*
707 F.3d 108 (1st Cir. 2013) ..........................................................19

*Kumar v. Shinseki,*
495 F. App'x 541 (5th Cir. 2012) (per curiam)...............................13

*Lauderdale v. Tex. Dep't of Crim. Just.,*
512 F.3d 157 (5th Cir. 2007)............................................................7

*Miller v. Ill. Dep't of Transp.,*
643 F.3d 190 (7th Cir. 2011)..........................................................19

*Morris v. City of Colorado Springs,*
666 F.3d 654 (10th Cir. 2012)........................................................16

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998).........................................................................16

*Pennington v. Tex. Dep't of Fam. & Protective Servs.,*
No. A-09-CA-287, 2010 WL 11519268 (W.D. Tex. Nov. 23,
2010) ...............................................................................................13

*Pullen v. Caddo Par. Sch. Bd.,*
830 F.3d 205 (5th Cir. 2016)..........................................................27

*Saketkoo v. Adm'rs of Tulane Educ. Fund*,
    31 F.4th 990 (5th Cir. 2022)................................................................12

*Schiano v. Quality Payroll Sys., Inc.*,
    445 F.3d 597 (2d Cir. 2006) ................................................................4

*Septimus v. Univ. of Hous.*,
    Civ. No. H-00-3307, slip op. (S.D. Tex. Jan. 24, 2002) ...........................12, 13

*Shellenberger v. Summit Bancorp, Inc.*,
    318 F.3d 183 (3d Cir. 2003) ..............................................................19

*Smith v. Ochsner Health Sys.*,
    956 F.3d 681 (5th Cir. 2020)..............................................................25

*Thompson v. Microsoft Corp.*,
    2 F.4th 460 (5th Cir. 2021)............................................................2, 13

*Watts v. Kroger Co.*,
    170 F.3d 505 (5th Cir. 1999)..........................................................6, 23

*Williams v. U.S. Dep't of Navy*,
    149 F. App'x 264 (5th Cir. 2005) (per curiam).............................................13

*Wooten v. Fed. Express Corp.*,
    325 F. App'x 297 (5th Cir. 2009) (per curiam)..............................................4

## Statutes

Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* .....................*passim*

    42 U.S.C. § 12112(a)........................................................................15

## INTRODUCTION

During the early days of the COVID-19 pandemic, David Calzada, a twenty-year-old in his first full-time job, sought to wear a mask at the pharmacy where he worked to protect himself from the heightened risk he faced from COVID-19 due to his asthma. In response, his employer twice sent him home without pay.[1] Upon his return to work, his supervisors, Steve Mosher and Anna Navarrette, berated and humiliated him and threatened him with termination because of his request to wear a mask, bringing him to tears. This harassment ultimately forced him to leave his job.

The district court determined that this case was "ill-fitted for resolution at the summary judgment stage," because "a trier of fact could find the harassment here sufficiently severe that it altered the conditions of Mr. Calzada's employment, created an abusive working environment, and interfered with his opportunity to succeed in the workplace," the elements

---

[1] Confusingly, Store Manager Anna Navarrette claimed during her deposition that she told Calzada he was allowed to wear a mask on Wednesday, March 25, 2020, the day before the first of the two shifts when he was sent home for seeking to mask. ROA.320. Calzada disputes this account, ROA.266-69 (RE.48-51), rendering it a contested factual issue.

required to prove an actionable hostile work environment under the ADA. ROA.438-39 (RE.22-23); *see Thompson v. Microsoft Corp.*, 2 F.4th 460, 470-71 (5th Cir. 2021). This was particularly true, the court explained, based on the context of the abuse: someone in Calzada's position would have reasonably perceived COVID-19, a "new, frightening phenomenon," as "exceedingly treacherous" given his asthma and his work environment, a place "where infected individuals undoubtedly flocked." ROA.438 (RE.22). In light of these dangers, and the imposition of a no-facemask policy that "was plainly contrary to the health and safety" of the pharmacy's employees, the court noted that the taunts, threats, and intentional intimidation to which Calzada was subjected "may have felt particularly intimidating and insulting." ROA.438-39 (RE.22-23). The court also concluded that "the evidence raises a genuine issue of fact as to whether a reasonable person in Mr. Calzada's position would have felt compelled to resign." ROA.442-43 (RE.26-27). But the district court nevertheless felt constrained to grant summary judgment to U.S. Drug Mart because the harassment at issue, in its view, was not similar enough to cases in which this Court has held that "an isolated incident of verbal harassment" was

sufficiently "severe to change the terms and conditions of the victim's employment," as required for liability under the ADA. ROA.439 (RE.23).

In its Opening Brief, the EEOC explained why the district court's interpretation of this Court's precedent was incorrect. The meeting at which Mosher and Navarrette berated Calzada was not the sole incident of harassment, but rather the culmination of multiple incidents over several days. And even if this Court were to consider the harassment as a single incident, which must be "extremely serious" to establish a cognizable harassment claim, nothing in the ADA or this Court's precedent limits liability to cases involving physical violence or racial epithets. A reasonable jury, taking into account all of the exacerbating factors, could have concluded that the harassment met the "extremely serious" standard.

In its Opposition, U.S. Drug Mart largely does not dispute the EEOC's recitation of the relevant facts or applicable legal framework. Indeed, it independently emphasizes the "unprecedented" nature of the early days of the pandemic. Brief of Appellee ("Opp. Br.") at 30. But U.S. Drug Mart contends that actionable harassment based on an isolated incident must involve the use of "racial epithets or physical violence." Opp. Br. at 28. To the contrary, however, "prior cases finding hostile work

3

environments, which often furnish quite egregious examples, 'do not mark the boundary of what is actionable.'" *Wooten v. Fed. Express Corp.*, 325 F. App'x 297, 303 n.20 (5th Cir. 2009) (per curiam) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 606 (2d Cir. 2006) ("Prior cases in which we have concluded that a reasonable juror could find that the work environment was objectively hostile do not 'establish a baseline' that subsequent plaintiffs must reach in order to prevail." (citation omitted)). As the district court explained, when considering all relevant factors—the threatening, intimidating, and humiliating language used; the power differential between Calzada and his much older supervisors; and the danger Calzada reasonably perceived as an asthma sufferer working with an infected population during the early, uncertain days of the COVID pandemic—the harassment at issue here was sufficiently serious that a reasonable jury could find that it altered the terms and conditions of Calzada's employment, violating the ADA. ROA.438-39 (RE.22-23). The cases U.S. Drug Mart cites from this Court involve less serious conduct and do not compel summary judgment in its favor.

4

U.S. Drug Mart also suggests affirming summary judgment on two additional grounds that the district court considered and rejected. Neither is valid. First, U.S. Drug Mart claims that Calzada's supervisors were simply responding to the manner in which Calzada sought to protect himself from the dangers posed by COVID, and that this response to his "attitude" justified the harassment to which they subjected him. But an employer cannot immunize itself from liability for harassing an employee in response to an accommodation request merely by baldly asserting, without objective evidence of inappropriateness, that it disliked the employee's tone. The argument also fails on its own terms because a reasonable jury could find that the record does not support U.S. Drug Mart's claims of insubordination. The company further argues that it cannot be liable for harassment because Mosher's wife told him he had overreacted and printed out "management tips" from the internet for him to read. As a matter of settled law, this is insufficient to establish an affirmative defense to liability.

Finally, U.S. Drug Mart argues that the EEOC did not meet its burden to show that Calzada's working conditions were sufficiently intolerable to establish a constructive discharge claim. As the district court held,

however, the evidence raised a genuine question of fact on this issue.

ROA.442-43 (RE.26-27).  Thus, for the same reason the hostile work

environment claim should have gone to the jury, the constructive discharge

claim should have gone forward as well.

## ARGUMENT

**I.   A reasonable jury could find that the disability-based harassment to which U.S. Drug Mart subjected Calzada was so severe that it altered the terms or conditions of his employment.**

**A.   Taking the totality of the circumstances into account, a reasonable jury could find that the harassment Calzada experienced was "extremely serious."**

As the EEOC explained in its Opening Brief, a prima facie case of

supervisor harassment requires showing that the employee belongs to a

protected class, he was subject to unwelcome harassment, the harassment

was based on the protected characteristic, and the harassment was severe

or pervasive enough to affect a term, condition, or privilege of his

employment.[2]  *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 453 (5th Cir.

---

[2] U.S. Drug Mart argues that the prima facie case also requires demonstrating the employer's knowledge of the harassment and failure to take prompt remedial action (and, indeed, chides the district court for failing to have done so).  Opp. Br. at 24, 40.  As this Court has repeatedly explained, however, that element is not required in cases alleging harassment on the part of "a supervisor with immediate (or successively higher) authority over the employee."  *Watts v. Kroger Co.*, 170 F.3d 505, 509

2013) (en banc).  Harassment in response to an accommodation request

constitutes harassment on the basis of disability, thereby satisfying the

third prima facie element.  *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 173-74,

179 (4th Cir. 2001).

Regarding the fourth element—whether the harassment is

sufficiently abusive to alter an employee's terms, conditions, or privileges

of employment—this Court has been clear that "a single incident of

harassment, if sufficiently severe, [can] give rise to a viable Title VII claim."

*EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).  Although

U.S. Drug Mart claims that the district court found that the facts "did not

show that the alleged harassment affected a term, condition, or privilege of

Calzada's employment," Opp. Br. at 24, the district court in fact found

precisely the opposite: "The court is … convinced a trier of fact could find

the harassment here sufficiently severe that it altered the conditions of Mr.

Calzada's employment, created 'an abusive working environment,' and

---

(5th Cir. 1999) (citing both *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), as modifying the prima facie test for supervisory harassment by eliminating the employer-knowledge prong); *see also Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 162-63 (5th Cir. 2007); *Boh Bros. Constr. Co.*, 731 F.3d at 453.

interfered with his 'opportunity to succeed in the workplace.'" ROA.439 (RE. 23) (citations omitted). A review of the recording transcript makes abundantly clear why the court believed that the harassment during the meeting, particularly when considered alongside the two previous instances in which Calzada was sent home without pay for seeking to protect himself from COVID,[3] met the applicable standard.[4]

Mosher told Calzada that his mask request rendered him "a disrespectful, stupid little kid … stupid as you can be," who was "acting like a five-year-old child." ROA.352 (RE.36). Driving his point home, Mosher told him that "little kids … usually get locked in their rooms for a while or even spanked" for asserting themselves. ROA.350-51 (RE.34-35). In Mosher and Navarrette's estimation, Calzada's temerity in asking to

---

[3] U.S. Drug Mart claims that "the only harassment in question is the meeting between Calzada, Mosher, and Navarrette," Opp. Br. at 26-27 n.8, but this assertion ignores the two prior instances in which U.S. Drug Mart refused to let Calzada work his scheduled shifts because of his mask request.

[4] U.S. Drug Mart prefaces its discussion of these comments with the equivocal phrase "even assuming all of it is true," and implies that Mosher deserves credit for not denying that he made the comments at issue. Opp. Br. 29-30. Of course, because the meeting was recorded and transcribed, Mosher could not credibly deny what he said, and no "assumption" about the truth of the recorded comments is necessary.

lessen his personal risk from COVID by wearing a mask showed a "complete lack of respect" and a poor "attitude" that "need[ed] to be disciplined and controlled." ROA.348-50 (RE.32-34). They told Calzada that instead of trying to ensure his safety, he should have been "respectful" by either not seeking to wear a mask or quitting. ROA.351 (RE.35). If he wanted to protect himself, Mosher taunted, Calzada's "protection is to walk out the door and never come back. You don't have to come in here and wear a mask. That's obviously something that scares you to death, so why are you even here now?" ROA.352-53 (RE.36-37). Mosher also told Calzada he would "have sent [Calzada] packing" and "would still fire [Calzada's] ass right now" if it were up to him. ROA.349, 352 (RE.33, 36).

U.S. Drug Mart characterizes the incident at issue as an anodyne "short-lived disagreement about mask protocol." Opp. Br. at 35. But Mosher himself admitted that it was instead a "threatening" and "intimidating verbal attack" during which he "said some things that [he] shouldn't have said," one that was "ill-advised," attributable to his "stupidity," and a violation of U.S. Drug Mart's Workplace Violence Prevention Policy. ROA.287-91, 293 (RE.54-58).

Several factors exacerbated the effect of Mosher and Navarrette's words, intensifying their harassing effect.  *See Boh Bros. Constr. Co.*, 731 F.3d at 453 (noting that, in assessing the seriousness of harassing conduct, the court must take the "totality of circumstances" into account).  First is the fact that Mosher and Navarrette were Calzada's supervisors.  As the Supreme Court explained, the "power and authority" of a supervisor "invests his or her harassing conduct with a particular threatening character."  *Ellerth*, 524 U.S. at 763; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998); *cf. Arguello v. Conoco, Inc.*, 207 F.3d 803, 810 (5th Cir. 2000) ("[I]n an action based on discrimination in the workplace[,] whether the discriminating party is a supervisor is all-important.").  Second is the age difference between Calzada and his harassers, the relevance of which even Mosher acknowledged.  ROA.290 (RE.57); *see also EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 433 (7th Cir. 2012).  Third is the threatening nature of the harassment, which included both explicit threats of termination and implicit threats of physical violence.  *See Ellerth*, 524 U.S. at 754 (noting that threats may contribute to a hostile work environment); *Harris*, 510 U.S. at 23 (explaining that "physically threatening or humiliating" conduct contributes to a hostile environment); *Flowers v. S.*

10

*Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001) (stating that physical threats are more likely to make harassment sufficiently abusive to alter the terms or conditions of employment).

A reasonable jury could have found that these elements collectively took the harassment far beyond the "[s]imple teasing," "offhand comments," and less serious "isolated incidents" generally found insufficient to state an actionable claim. *Faragher*, 524 U.S. at 788 (citation omitted). Instead, when assessing the singular context of this case, including the fear and uncertainty inherent in the early days of the worldwide COVID pandemic, the heightened danger Calzada faced as an asthmatic front-line pharmacy worker required to interact with a disproportionately infected population, his young age and lack of workforce experience, and the particularly humiliating language his older supervisors used in berating him for seeking to protect his health, which they punctuated with implicit threats of violence and explicit threats of termination, the jury could have concluded that the harassment was in fact sufficiently serious to meet this Court's high standard.

Rather than grappling with these exacerbating factors, U.S. Drug Mart instead simply cites several cases involving less serious harassment in

11

which this Court held that the facts did not amount to a hostile work environment and claims that these cases stand for a "rule that an isolated incident will not support a hostile work environment claim." Opp. Br. at 28-30, 32. To the contrary, such a "rule" does not exist, and would run counter to the Supreme Court's holding that a single incident can, in fact, support a hostile work environment claim if it is "extremely serious." *Faragher*, 524 U.S. at 788; *see also WC&M Enters.*, 496 F.3d at 400 ("Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, [can] give rise to a viable Title VII claim…."); *cf. Flowers*, 247 F.3d at 233 ("We conclude that the language of Title VII and the ADA dictates a consistent reading of the two statutes.").

As the EEOC explained in its Opening Brief, the cases U.S. Drug Mart relies on are not controlling because they involved criticism of the work performance of sophisticated professionals, not a twenty-year-old like Calzada subjected to humiliation while facing a direct threat of disease and possible death. EEOC Opening Br. ("EOB") at 37-39; *see Septimus v. Univ. of Hous.*, Civ. No. H-00-3307, slip op. at 2 (S.D. Tex. Jan. 24, 2002) (noting that the supervisor did not yell or use inappropriate language when criticizing the Assistant General Counsel plaintiff's work performance), *aff'd*, 399 F.3d

601 (5th Cir. 2005); *Saketkoo*, 31 F.4th 990, 1003-04 (5th Cir. 2022) (explaining

that the supervisor told the medical school associate professor plaintiff,

"We don't need you thinking!  We need you working."); *Pennington v. Tex.*

*Dep't of Fam. & Protective Servs.*, No. A-09-CA-287, 2010 WL 11519268, at *11

(W.D. Tex. Nov. 23, 2010) (recounting how a senior manager yelled and

slammed files and doors), *aff'd on other grounds*, 469 F. App'x 332, 336 (5th

Cir. 2012).[5]  U.S. Drug Mart asserts that the EEOC's argument in this regard

"is unpersuasive for several reasons," Opp. Br. at 32, but fails to elaborate.

Elsewhere in its brief it inaccurately describes the plaintiff in *Septimus*, an

Assistant General Counsel of a large university, as a "junior attorney" and

the university's General Counsel as an "older male partner[]," Opp. Br. at

35, but does not otherwise explain why the distinction between her

---

[5] U.S. Drug Mart cites several additional cases on this point in passing, Opp. Br. at 29, but the facts in those cases are similarly much less serious than those at issue here.  *See Thompson*, 2 F.4th at 471 (manager told plaintiff he had been moved out of a position and said he should "seek a different career" because of his autism); *Kumar v. Shinseki*, 495 F. App'x 541, 542-43 (5th Cir. 2012) (per curiam) (plaintiff's supervisors accused him of hiding an injury, gave him allegedly unfounded job counseling, and threatened him with termination); *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 268 (5th Cir. 2005) (per curiam) (coworker entered women's restroom while plaintiff was inside, yelled at her for requesting fax machine toner, and closed her clinic one day without asking).

situation and that of the twenty-year-old pharmacy technician trainee facing a severe threat to his health in the instant case is "unpersuasive."

More importantly, the harassing effect at issue here arose not only from the abusiveness of the words used but from the context in which the incident occurred—a factor U.S. Drug Mart briefly notes, Opp. Br. at 15, 30 (noting the "unprecedented" level of uncertainty during the early days of the COVID pandemic), but otherwise leaves unaddressed. Mosher and Navarrette berated Calzada extensively because he sought to wear a mask in a reasonable attempt to protect himself from a potentially deadly disease, a danger heightened by his asthma and his repeated workplace exposure to infected members of the public. *See* ROA.349 (RE.33) ("If I can't wear a mask and I bring this home, that's it for me."). Arising in response to Calzada's attempts to take basic protective measures against the potentially dire threat of COVID—whose contours were not yet fully known[6]—Mosher and Navarrette's harassment is much more severe than

---

[6] Seeking to exonerate Mosher's behavior, U.S. Drug Mart observes that Calzada made his request before the Center for Disease Control issued guidelines recommending that everyone leaving their home wear a mask and before any local governments required masking. Opp. Br. at 30; *see id.* at 15-16 (discussing CDC mask guidelines); 39 (noting that "the mask policy applied to all employees, as did the change in policy that occurred

the work-based criticism at issue in the cases on which U.S. Drug Mart

relies. Such considerations are an essential part of the "entirety of the

evidence in the record" courts must consider when assessing whether

harassment is severe enough to alter the terms or conditions of the victim's

employment. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 585 (5th Cir.

2020) (citing *Credeur v. La. Through Office of Att'y Gen.*, 860 F.3d 785, 796 (5th

Cir. 2017)); *see also Flowers*, 247 F.3d at 235-36.

U.S. Drug Mart dismissively characterizes accounting for such

concerns as instituting a "special 'communicable disease' exception" to the

general rules regarding the analysis of harassment claims, a "change" to

"the existing [analytical] framework," and an "effective[] overrul[ing]" of

Circuit precedent. Opp. Br. at 32-33. To the contrary, considering the

context in which harassment occurs is fundamental to the existing

approach the Supreme Court and this Court have required for decades.

---

within days" of Calzada's mask request). This argument misses the mark.
The issue is not whether Mosher and Navarrette were required to make *all
employees* wear a mask. It is, instead, whether they violated Calzada's
rights under the ADA by harassing him for seeking to wear a mask as an
accommodation for his asthma, a condition that worsened the potential
dangers he faced from COVID-19. *See* 42 U.S.C. § 12112(a).

*See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)

("[T]he objective severity of harassment should be judged from the

perspective of a reasonable person in the plaintiff's position, considering all

the circumstances." (internal citation omitted)); *Boh Bros. Constr. Co.*, 731

F.3d at 453 ("Ultimately, whether an environment is hostile or abusive

depends on the totality of circumstances."); *Flowers*, 247 F.3d at 235-36.

U.S. Drug Mart's attempts to distinguish the cases the EEOC cites in

support fall short.  For example, it characterizes the Supreme Court's *Harris*

decision as "involv[ing] significantly different types of threatening and

humiliating conduct," Opp. Br. at 31, but fails to explain why calling the

female employee a "dumb ass woman" in *Harris*, 510 U.S. at 19, differs

fundamentally from Mosher calling Calzada "a disrespectful, stupid little

kid … stupid as you can be," ROA.352 (RE.36).  Similarly, U.S. Drug Mart's

discussion of *Morris v. City of Colorado Springs*, Opp. Br. at 33-34, does not

attempt to counter the EEOC's point in citing the case: that a single incident

of harassment putting a plaintiff in fear of contracting "a deadly and

communicable disease" could be sufficient to establish a hostile work

environment claim.  666 F.3d 654, 668 n.7 (10th Cir. 2012).  Nor does U.S.

Drug Mart refute the Seventh Circuit's observation in *Management Hospital*

*of Racine* that the difference in age and authority between a harasser and a victim may aggravate the effect of the harassment.  666 F.3d at 432.

U.S. Drug Mart also misstates the record in its description of the harassment at issue.  It contends that Calzada "never claimed that he felt humiliated."  Opp. Br. at 31.  In fact, Calzada testified, "[T]he humiliation it did kind of like—it kinda got to me a lot because … hearing everything[,] him saying 'I would fire your ass' and 'you're a little kid' and everything, it just kind of degraded me."  ROA.277.  Similarly, although U.S. Drug Mart attempts to minimize the physically threatening nature of Mosher's tirade, Opp. Br. at 31, Mosher himself testified that his actions constituted "an intimidating verbal attack … [t]he point of which was to be threatening."  ROA.293; *see id.* at ROA.287 (RE.54) (admitting he was "being threatening"); ROA.286 (RE.53) (admitting to being more threatening than Calzada); ROA.281 (RE.58) (admitting to violating U.S. Drug Mart's Workplace Violence Prevention Policy).  U.S. Drug Mart objects that Calzada "never testified to subjective feelings of harassment based on his age," Opp. Br. at 35, but neither the ADA nor the cases interpreting it require a harassment victim to testify how each separate contextual factor independently made the harassment worse.  Finally, U.S. Drug Mart

17

contends that the harassment "did not unreasonably interfere in Calzada's work." Opp. Br. at 31. In fact, the harassment was so severe that Calzada felt compelled to quit the same day it occurred. ROA.276.

In short, taking the full factual context into account, a reasonable jury could find that the harassment Calzada experienced because he sought to protect himself from COVID by wearing a mask was sufficiently "serious" to alter the terms and conditions of his employment. Nothing in this Court's precedent or in U.S. Drug Mart's Opposition Brief dictates a contrary result.

### B. U.S. Drug Mart cannot immunize its harassing conduct merely by referring to Calzada's alleged "attitude."

U.S. Drug Mart argues that the supervisory harassment directed at Calzada stemmed from his "attitude" in asking to wear a mask, rather than the underlying asthma that led him to seek protection in the first place, and contends that this distinction should immunize its conduct.[7] Opp. Br. at

---

[7] U.S. Drug Mart characterizes the EEOC's position as arguing that it harassed Calzada based on his "asthma diagnosis." Opp. Br. at 36, 40. As the Complaint makes clear, however, it was Calzada's request for a reasonable accommodation for his disability, not his diagnosis, that triggered the harassment. ROA.8-9. Harassment in response to a reasonable accommodation request constitutes disability discrimination under the ADA. *See, e.g.*, *Fox*, 247 F.3d at 173-74, 179. In its Opening Brief,

36-40.  This argument finds no support in the caselaw or the evidentiary
record.

First, as the EEOC explained in its Opening Brief, an employer may
not simply "invoke the specter of insubordination in order to mask[]
retaliation for requesting [an] accommodation." *Kelley v. Corr. Med. Servs.,
Inc.*, 707 F.3d 108, 118 (1st Cir. 2013) (alterations in original) (citation
omitted); *see also Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 200 (7th Cir.
2011); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190 (3d Cir. 2003).
U.S. Drug Mart does not respond to this point at all.  As the district court
explained, because the harassment was inseparable from the underlying
accommodation request, "[a]bsent [Calzada's] disability, there would have
been no argument."  ROA.436 (RE.20).  Thus, a rational jury could find that
the harassment was sufficiently connected to Calzada's disability.

---

the EEOC cited several analogous cases involving harassment stemming
from requests for religious accommodations.  EOB at 21.  Although U.S.
Drug Mart questions the applicability of these cases, Opp. Br. at 35-36, their
relevance is obvious: if a reasonable jury could find that an accommodation
request triggering a hostile work environment was actionable in the Title
VII context, it could do so in the ADA context as well.  *See Flowers*, 247 F.3d
at 233 (explaining that Title VII and the ADA should be read consistently in
their prohibition on harassment affecting the "terms, conditions, or
privileges of employment").

Second, a rational jury, examining the full evidence in the record, could conclude that the harassment Calzada faced was, in fact, attributable to the mask request itself rather than any insubordinate "attitude." Mosher testified that the recorded conversation was the only time he ever perceived Calzada as behaving disrespectfully. ROA.292 (RE.59). And although he claimed that Calzada "was being threatening," ROA.198, Mosher conceded after listening to a recording of the conversation that he, rather than Calzada, was the one behaving more threateningly, ROA.286 (RE.53). Robert Primero, a senior pharmacy technician who was present at U.S. Drug Mart that morning, testified that Mosher's demeanor during the exchange was "[c]ounterproductive, uncalled for, harassment," while Calzada was being "reasonable," and was only "doing what anybody would do" in "trying to … be safe for himself and his family." ROA 339. Thus, whether the harassment actually arose from Calzada's perceived "insubordinate" manner or "poor attitude," Opp. Br. at 38, was at the very least a question of fact for the jury.

Even taking Mosher and Navarrette's claims at face value, it is difficult to understand how Calzada could have sought to protect himself from the intensified risk he faced from COVID without their accusing him

20

of insubordination. Because he raised the issue of masking, Mosher claimed that Calzada "didn't give a damn about [his] employer," and told him he wanted to "fire [his] ass right now." ROA.352 (RE.36). After Navarrette and Mosher told Calzada that he was not being sufficiently "respectful," ROA.349, 351 (RE.33, 35), Mosher clarified that, in his estimation, Calzada's only "respectful" options were to agree not to wear a mask—putting his life at risk—or quit. ROA.351 (RE.35) ("Your only choice was just like I said. You be respectful and you say, Okay. Well, then I'm going to have to go home. I'll quit. That was your only other choice."). Navarrette, for her part, criticized Calzada for "com[ing] with the attitude," rather than being willing to "meet halfway," but failed to explain what "meet[ing] halfway" could possibly mean in the context of asking to protect oneself from a potentially deadly virus. ROA.357 (RE.41). A reasonable jury could well find that the harassment resulted because Calzada's supervisors interpreted his accommodation request as inherently insubordinate. Such a response violates the ADA.

### C. U.S. Drug Mart's argument about prompt remedial action misstates the law and the factual record.

U.S. Drug Mart contends, alternatively, that it can avoid liability as a matter of law with evidence that it took prompt remedial action against Mosher. Opp. Br. at 40-44. In making this argument, U.S. Drug Mart misstates the applicable law and mischaracterizes the record. Nothing about the company's antidiscrimination policies or its response to the harassment of Calzada supports, let alone mandates, a finding of immunity from liability.

Generally, as the Supreme Court has explained, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. In such cases, an employer may establish immunity only in limited circumstances. *Id.* at 807. Vicarious liability automatically attaches if the supervisor takes a tangible employment action against the victim as part of the harassment. *Id.* at 808. If no tangible employment action has been taken, however, the employer "may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.* at

807.  To establish such a defense, the employer must prove two elements:
"(a) that the employer exercised reasonable care to prevent and correct
promptly" the harassing behavior, and "(b) that the plaintiff employee
unreasonably failed to take advantage of any preventive or corrective
opportunities provided by the employer or to avoid harm otherwise." *Id.*

In summarizing these standards, U.S. Drug Mart misstates the law in
several important respects.  First, it claims that the plaintiff has the burden
of affirmatively showing that the employer failed to take effective action
but relies on a pre-*Faragher* Ninth Circuit case for this proposition that
*Faragher* superseded.  Opp. Br. at 41 (citing *Mockler v. Multnomah Cnty.*, 140
F.3d 808, 812 (9th Cir. 1998)).  As this Court has repeatedly made clear,
"The *Ellerth/Faragher* affirmative defense is conjunctive, the defendant
bears the burden of proving both elements by a preponderance of the
evidence."  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 483 (5th Cir.
2008) (citing *Ellerth*, 524 U.S. at 765); *see also, e.g.*, *Boh Bros. Constr. Co.*, 731
F.3d at 462 ("The employer bears the burden to prove *both* elements [of the
affirmative defense] by a preponderance of the evidence."); *Watts*, 170 F.3d
at 509 (explaining that, in cases of supervisor harassment, demonstrating
respondeat superior liability is not part of the plaintiff's prima facie case).

23

Second, U.S. Drug Mart focuses on the adequacy of the employer's response without addressing the other mandatory prong of the defendant's affirmative defense: showing that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000).  In ignoring this second element of the affirmative defense, U.S. Drug Mart relies on several cases predating *Faragher* and *Ellerth* and a single-judge opinion, *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir. 1999) (Jones, J.), that this Court has explained has no precedential weight.[8]  *See Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 796 n.1 (5th Cir. 1999) (Wiener, J.) ("Because [the third judge on the panel] concurs only in the

---

[8] U.S. Drug Mart also cites an unpublished decision, *Gordon v. Acosta Sales & Marketing, Inc.*, 622 F. App'x 426 (5th Cir. 2015) (per curiam), in which this Court found a lack of severe or pervasive harassment sufficient to support the plaintiff's hostile work environment claim but concluded, in the alternative, that the defendant took proper remedial action.  To the extent *Gordon* may be understood as eliminating the defendant's burden to prove that the employee acted unreasonably, the case has no precedential weight and, based on the rule of orderliness, *see Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008), could not supersede *Casiano* even if it had been published.

judgment of this case without concurring in Judge Jones's opinion or mine, neither enjoys a quorum and thus neither writing constitutes precedent in this Circuit."); *Casiano*, 213 F.3d at 283 n.2 (stating that Judge Jones's *Indest* opinion is not precedential because it lacks a concurrence of another member of the panel); *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1025 (10th Cir. 2001). To the extent U.S. Drug Mart claims that it does not need to show Calzada behaved unreasonably to avoid liability, it misstates the Supreme Court's clear instruction. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *Casiano*, 213 F.3d at 284; *see also Indest*, 168 F.3d at 801 (Wiener, J.) (explaining that the "cherry-picking of but one of two conjoint elements of the [*Faragher/Ellerth*] defense flies directly in the face of identical statements to the contrary in each of the two Supreme Court opinions").

Based on the framework for assessing a defendant's affirmative defense, properly stated, U.S. Drug Mart's argument fails on multiple grounds. First, as the party seeking to assert an affirmative defense for summary judgment purposes, U.S. Drug Mart has the burden of proving all elements of the defense. *See, e.g.*, *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 683 (5th Cir. 2020) ("To succeed on summary judgment in reliance on an affirmative defense, the moving party 'must establish beyond

peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  But it does not even argue, let alone prove, that Calzada acted unreasonably in failing to avoid harm.  Nor could it. Mosher and Navarrette both reported to U.S. Drug Mart's Chief Operating Officer, David Paschal.  ROA.326 (deposition testimony of Paschal). Calzada knew that the directive forbidding employees from wearing masks came from Paschal.  ROA.354-55 (RE.38-39) (Calzada stating that he asked for the opportunity to wear a mask, but Paschal "wouldn't allow it"; Navarrette confirming, "No, he didn't allow it.  He did not allow it.  He really didn't allow it.  That's why I couldn't have anybody wear a mask. He would not allow it.").  A reasonable jury could therefore find that Calzada acted reasonably in not complaining to Paschal about the abuse he faced from Mosher and Navarrette due to his masking requests.

Second, U.S. Drug Mart has offered no proof that it took any reasonable steps to "prevent and correct promptly" the harassment at issue, let alone enough to satisfy its burden by a preponderance of the evidence.  *Faragher*, 524 U.S. at 807.  Regarding prevention, Paschal testified that U.S. Drug Mart did not provide training on disability discrimination or

any other form of discrimination and had no policy regarding

discrimination prevention. ROA.325, 327-28. The absence of such a policy

dooms U.S. Drug Mart's affirmative defense at the summary judgment

stage. *See Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 210-13 (5th Cir. 2016)

(holding that a lack of training on and promulgation and publicization of

an anti-harassment policy precluded summary judgment on the employer's

affirmative defense); *Boh Bros. Constr. Co.*, 731 F.3d at 463-66 (holding that a

vague policy that did not specify complaint procedures and was not

publicized could not establish the affirmative defense).

As to correcting harassing behavior, the record contains no evidence

of any such remedial action, prompt or otherwise. Store Manager

Navarrette, Mosher's wife, testified that she told him she found his

behavior "unacceptable," and she printed out "tips on management" for

him about "not losing our cool and staying calm." ROA.141. But this

interaction does not constitute discipline or any sort of official reprimand.

Navarrette held no authority over Mosher. Paschal testified that "the

entire practice of pharmacy within the location comes under" Mosher, and

that Mosher reported to Paschal. ROA.326. Primero, the senior pharmacy

technician, similarly testified that Mosher, not Navarrette, "is the person

with the ultimate authority at Fabens Pharmacy."  ROA.336.  And printing out management suggestions about controlling one's temper is a far cry from the sort of remedial action required to establish the correction prong of the affirmative defense.  *See, e.g.*, *Boh Bros. Constr. Co.*, 731 F.3d at 466 (concluding that an instruction to a harasser to "handle himself in a more professional manner" was insufficient to establish an affirmative defense). Furthermore, even if the Court were to assume Navarrette made the suggestion to Mosher about keeping his temper in check in her capacity as a coworker rather than a spouse, it was clearly ineffective: Mosher still angrily referred to Calzada as "that little child" during his deposition more than two years after the events at issue.  ROA.287.

Because U.S. Drug Mart cannot prove by a preponderance of the evidence either that Calzada unreasonably failed to take advantage of preventive or corrective opportunities or that it took reasonable steps to prevent and correct the supervisors' harassing conduct, it cannot establish an affirmative defense under *Faragher* and *Ellerth*.

II.  **Calzada resigned in response to the harassment and, as the district court explained, a reasonable jury could find that a reasonable person in Calzada's position would have felt compelled to resign.**

U.S. Drug Mart claims that Calzada "resigned for reasons that had nothing to do with disability discrimination." Opp. Br. at 39. This assertion misrepresents Calzada's testimony. Calzada testified that shortly after the March 30 meeting during which Mosher and Navarrette harassed him, he went home on his lunch break and spoke to his parents about the incident: "Honestly, I kind of did cry with them. They just advised me— they just told me like that that wasn't right and everything like that and that it was my choice on what to do after that." ROA.276. Following that conversation, Calzada decided to quit. *Id.* Thus, although Calzada also testified that he had previously had "little disagreements here and there" with Mosher over "small things," ROA.267 (RE.49), he clearly stated that it was "the name calling and the yelling" in response to his request to wear a mask that created a "scary … situation" and "degraded" him, forcing him to quit. ROA.273-74, 276-77. At worst, the extent to which the "tiny little things" previously arising between Mosher and Calzada also affected Calzada's decision to quit, ROA.275, should be a question of fact for the jury.

More generally, although U.S. Drug Mart claims that the record does not support a constructive discharge claim, Opp. Br. at 46, the district court disagreed, finding that the evidence did "raise[] a genuine issue of fact as to whether a reasonable person in Mr. Calzada's position would have felt compelled to resign."  ROA.442-43 (RE.26-27).  The court nevertheless felt bound to dismiss the constructive discharge claim because it already believed it was required to dismiss the hostile work environment claim.  ROA.443 (RE.27).  For the reasons explained above, however, a reasonable jury could find the hostile work environment claim valid under the law of this Court.  Thus, a jury should have the opportunity to decide the constructive discharge claim as well.

## CONCLUSION

For the foregoing reasons and the reasons detailed in the EEOC's Opening Brief, the judgment of the district court should be vacated and the case remanded for further proceedings.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

/s/ Jeremy D. Horowitz
JEREMY D. HOROWITZ
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2549
Jeremy.Horowitz@eeoc.gov

July 17, 2023

## CERTIFICATE OF SERVICE

I, Jeremy D. Horowitz, hereby certify that I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system on this 17th day of July, 2023, and I will file paper copies of the brief upon the Court's request.  I also certify that all counsel of record have consented to electronic service by virtue of Fifth Circuit Rule 25.2.3 and will be served the foregoing brief via the Court's appellate CM/ECF system.

/s/ Jeremy D. Horowitz
JEREMY D. HOROWITZ
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2549
jeremy.horowitz@eeoc.gov

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 6,455 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

/s/ Jeremy D. Horowitz
JEREMY D. HOROWITZ
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2549
Jeremy.Horowitz@eeoc.gov

July 17, 2023